Lambert, J. (dissenting):
I am unwilling tb concur, in the ¡ decision about, tp, be; handed down in this case. The plaintiff, who .'appears to have,been, slightly *306 injured by being struck by a descending elevator while he was at work in changing some screws in a lock on a screen door, has a judgment for $1,631.88, and it seems to me that the case is devoid' of evidence to justify such ■ a hesiilt.. The facts about which there is no dispute show that one Sanderson had taken a job to install Certain screen or summer doors in front of the elevator -doors in the basement of the Macy store, and this- work had been practically completed. Subsequently Sanderson directed the- plaintiff to go to the store and change the screws in the locks, replacing those which had been used with longer ones. Plaintiff had made the change in' the door in one of the shafts, and had called . the attention of the boy operating the second one to the fact that he'was going to do some work in that shaft. The boy in this elevator opened the door, the lock being on the inside, in order that the plaintiff might be in a position to do the work. Plaintiff says the boy probably knew what work he ■ was going to do, and that he (plaintiff) told the boy to look out for him. Plaintiff says it was necessary for him to be inside the door and to lean out into the elevator shaft to take out'and replace these screws, and that while so engaged the elevator came down' upon him, inflicting the injuries complained of ip this action. - He is the only witness in support of the-manner, in which the accident-occurred called by the plaintiff, and lie says that-after telling the elevator boy that he was going' to. work there,, the elevator boy “ took his car up and I paid no more attention to'him, and I put my shoulder in to get the screws out of the lock, and the first thing I knew he had me clipped by the shoulder.” On 'cross-examination he says-: “ I went to the second elevator and started to put on the screws and told this bóy to open the door for me. He did do that so that I could get inside the door. ' I told him I was going to work there and to look out'for me. That is right. I did not give it another thought. That is right.” The boy who was operating the eleyator frankly admits that he knew the plaintiff was at work' there, but he says he looked down the elevator shaft before the elevator reached the basement and, not seeing any one in the way, he let the car down at half spe'ed, and that the' plaintiff intruded his-shoulder in time to get hit, but that he reversed his car at once and that the plaintiff was not seriously injured, These were the only eye-witnesses of the accident who were called, and *307 there is no circumstantial evidence to contradict or corroborate either of the witnesses. The testimony of the elevator boy that he looked down the shaft and saw no one is not contradicted and is in entire harmony with the testimony of the plaintiff that he dismissed all thought of the boy from his mind after telling him that he was going to work there and to look out for him; for if this was his attitude, he may not have been in view when the boy started down, and yet he may have stepped into the shaft immediately afterwards, thus not only permitting but inviting the accident which occurred to him. •' .
In my judgment, there was practically no evidence to show negligence on the part of the defendant or its servant. While it is true, perhaps, that the'plaintiff had a right to rely upon the elevator boy to “ look out for him,” the elevator boy had a right to assume that tile plaintiff, a man of experience, knowing that the elevators were being operated, would exercise some degree of care for his own safety. The duty of reasonable care is'mutual, and both parties had a right to expect that the other would exercise that reasonable degree of care which the law demands, and the elevator boy, having looked down the shaft, and seeing no one in the way, was not bound to anticipate that the' plaintiff would, without looking, intrude his body into the shaft while the car was descending. The testimony of the boy was not disputed and no good reason suggests itself why his evidence was not to be believed. But assuming that the jury might elect to disbelieve him, wftere is the evidence in this case to warrant the conclusion that the plaintiff was free from contributory negligence ? This is not a case where the rule is to be relaxed because of the fact that the injured one is dead and in no position to furnish direct evidence. He testified upon the trial that he told this boy to look out for him and that then he went at his work and gave the boy and the elevator no further thought; “I did not give it another thought.” This man, a carpenter of thirty years’ experience, knowing that this elevator was being operated at irregular intervals, engaged in a job that would take but a few minutes to perform, and obliged to be at times both inside and outside of the shaft in order to perform the work, tells the jury that he told this boy to look for him and then dismissed the matter from his mind and went on with his work in *308 effect as though he were in a position where no danger was to be anticipated ; and. we are asked: to sustain a verdict which must determine, that this was.the exercise of "due care on his part, and that he has furnished) the evidence of ¡absence of contributory! negligence, which the law demands as a condition of - liability. For my¡ own part I. am unable to agree to such a ruling.
The case of Schmitt v. Metropolitan Life Ins. Co. (13 App. Div. 120) is clearly distinguishable. In that case there was a work, involving several days of-labor, and the contract provided that, the elevator should be operated during the progress of the work, and a: system of. signaling, had been agreed: upon and ¡pursued during the time, with perhaps a short interval, in each day during a temporary! change of operators, and the. evidence which was urged- as indicating contributory negligence on-the part of plaintiff’s testator, who. was killed-while necessarily leaning into the elevator shaft, was the fact that deceased had ridden in ¡the elevator with Christopher, thfe; Relieving man, and knew that the latter was in the habit of • operat ing the same without, giving warming, and it Was while Christopher was operating the elevator that the" deceased, met with his -accident. It" is: one thing, for a man to rely upon a customary and agreed system, of signals, in a continuous employment, - where he may be fairly .expected: to become engrossediin his work, or to have hjs attention taken away from his obvious dangers, but to. invoke this rule in a case of .mere incidental employment, not to occupy more than half an hour (this being, the time used.on the,other elevator in doing the same, work) and to permit, the plain tiff, to rely wholly on the élevator boy, is not justified by any adjudicated case falling within the range of my observation." It does not. appear that there had- been any signal agreed upon except- such as may be inferred from’ the fact, that, on two occasions-the elevator boy gave notice, of his intention to lower the elevator. The boy was told to .look out for the plaintiff, and the uncontradicted: evidence is that he did-look out for him on two separate occasions, and that on the third, occasion he looked:dowri the shaft and- did not see the.plaintiff, and, that, he then lowered the car at-half speed. Clearly, the defendants ■ did not, in employing the plaintiff, for a mere incidental:job of this character, become insurers: They Were only called upon to exercise reasonable care, and in the.exercise of .this care they had a right to *309 assume that the plaintiff would himself take that reasonable degree of care which the known and obvious dangers would suggest to a reasonably prudent man.
In my judgment the evidence shows conclusively an absence of reasonable care on the part of the plaintiff, and that it was error to refuse to set aside the verdict.